UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No.

JENNIFER CROOKS,

     Plaintiff,

vs.

KEVIN RAMBOSK, in his capacity as
Collier County Sheriff, ROM
POLLACK, individually, PAVILION
AT HEALTHPARK, LLC d/b/a PARK
ROYAL HOSPITAL,

     Defendants.

                                      /

## COMPLAINT

Plaintiff, JENNIFER CROOKS, by and through counsel, hereby files her complaint and alleges:

## INTRODUCTION

On September 19, 2024, Defendant Deputy Rom Pollack involuntarily committed Plaintiff Jennifer Crooks under Florida's Baker Act without reason to believe that mental illness made her substantially likely to cause serious bodily harm. Defendant Park Royal Hospital then confined Crooks for six days, even though its intake process documented no psychosis, no history of suicide attempts or self-harm, no active suicidal thoughts, and determined she was a low risk of suicide under the Columbia-Suicide Severity Rating Scale. Through this action, Crooks seeks to vindicate her rights under federal and state law and to hold both Defendants accountable for her unlawful confinement.

## JURISDICTION

1.    This is an action for damages exceeding $75,000, not including costs, attorney's fees, and prejudgment interest.

2.  The claims asserted arise pursuant to 42 U.S.C. § 1983 the Fourth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and the laws of the State of Florida. This Court has jurisdiction to hear all claims contained in this action.

3.  This court has original jurisdiction over claims brought pursuant to 42 U.S.C. § 1983 and concurrent subject matter jurisdiction over the claims brought pursuant to Florida law.

4.  Venue is proper in Collier County, Florida because these events took place in Collier County, which is within the boundaries of the Middle District of Florida.

5.  Plaintiff has performed all conditions precedent, in accordance with §768.28(6), Florida Statutes, and all other requirements, before bringing this action. All conditions precedent have otherwise occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable.

6.  This complaint is based on the individual and concerted conduct of the named Defendants in using the police power of the State of Florida to deprive Plaintiff of her constitutional and civil rights. The Defendants' conduct, individually and jointly, violated the rights of Plaintiff under the Fourth and Fourteenth Amendment to the United States Constitution as well as the statutes and laws of Florida.

**PARTIES**

7.  Plaintiff JENNIFER CROOKS (hereinafter the "Plaintiff" or "Crooks" or "Ms. Crooks"), was a resident of the State of Louisiana at the times alleged in the Complaint.

8.  At all relevant times, defendant Collier County Sheriff's Office (the "Sheriff's Office") is and was a duly organized public entity existing under the laws of the State of Florida. At all relevant times, the Sheriff's Office was the employer of Defendant Deputy Pollack and all unknown officers.

9.    At all relevant times, ROM POLLACK (hereinafter the "defendant" or "Pollack" or "Deputy Pollack") was a duly authorized employee and agent of the Sheriff. Upon belief, Deputy Pollack is a citizen of the State of Florida residing in Collier County and is over the age of 18 years.

10.    At all relevant times, The Pavilion at Healthpark, LLC d/b/a Park Royal Hospital (hereinafter "Park Royal Hospital) was and is a limited liability company doing business in Lee County, Florida.

11.    The causes of actions contained in this complaint occurred and accrued in Collier County and Lee County, Florida, in the Middle District of Florida.

## STATEMENT OF FACTS

12.    On September 19, 2024, Plaintiff brought her car to the Goodyear Auto Service, located at 14275 Collier Bolevaurd, Naples, Florida.

13.    After the work began, Plaintiff was told that her brakes also needed repair and that the necessary parts were in stock.

14.    After more than an hour and a half passed with no completed repair, Plaintiff complained at which point she learned the part was in fact not in stock.

15.    Repairs were completed and Plaintiff received a bill she believed was significantly more than what the service was worth.

16.    As Plaintiff expressed her frustration, a front desk employee mocked and mimicked her and began recording her on his phone against her will.

17.    Plaintiff was concerned that she was being labeled a "Karen" and that the video was being or would be posted on the internet to mock and humiliate her.

18.    Plaintiff asked him to stop recording, delete the video, and let her confirm there was no recorded video of her. The employee refused.

19.    Plaintiff called the Collier County non-emergency line to report the illegal video recording and waited on scene in her car for law enforcement to

arrive.

## The Incident

20.    Collier County Deputy Rom L. Pollack responded.

21.    Plaintiff reported the illegal recording.

22.    Defendant Deputy Pollack spoke to the Goodyear employees who claimed Plaintiff had said her brothers were dead and that she wished she was with them.

23.    Defendant Deputy Pollack spoke with Plaintiff who explained that her brothers had passed away and that she simply missed them every day.

24.    When Deputy Pollack asked if she was currently experiencing suicidal thoughts, she told them no. Plaintiff explained that because of a traumatic brain injury, she had suicidal thoughts in the past.

25.    Plaintiff remained lucid and oriented throughout the encounter. When the Deputy asked whether she knew where she was, she identified her location without difficulty and reminded the officers that she had already given that location to the dispatcher.

26.    Despite Plaintiff's clear denial of present suicidal thoughts and evident lucidity, the officers told her that she was paranoid and continued to question her as though conducting a psychological evaluation.

## The Warrantless Seizure

27.    Plaintiff told the Defendant Deputies she was leaving and began walking to her car.

28.    Deputy Pollack approached Plaintiff from behind and placed her in handcuffs. Plaintiff heard an officer say, "Baker Act."

29.    Deputy Pollack placed Plaintiff in the back seat of his patrol car, without running air conditioning.

## Baker Act Form

30.    When a law enforcement officer initiates a Baker Act, without a prior court order, they must complete a "Report of Law Enforcement Officer Initiated Involuntary Examination."

31.    On September 19, 2024, at 2:39 p.m., Defendant Deputy Pollack completed a Report of Law Enforcement Officer Initiated Involuntary Examination.

32.    Deputy Pollack alleged Plaintiff had a mental illness, was unable to determine for herself whether examination was necessary, and that there was a substantial likelihood that without care or treatment she would cause serious bodily harm to herself.

33.    Deputy Pollack provided a narrative of the facts presented to him that justified the Baker Act.

34.    Deputy Pollack asserted that a Goodyear employee told him that Plaintiff:

> Became upset about how long it was taking to get her vehicle fixed. The store employee further advised Jennifer became irate and was complaining about how loud the TV was. The employee then advised he lowered the TV to accommodate her. The employee then advised Jennifer continued to get upset and made accusations that the employes were recording her. However, they advised all they were doing was holding there [sic] phone and not recording her. The employee then advised Jennifer made a concerning statement saying that her brothers were dead and she wished she was with them. I then made contact with Jennifer who was outside the business and screaming. Jennifer was asked if she made a statement about her brothers to which she stated that her brothers were dead and she wished she was too, everyday. Jennifer advised she has suicidal thoughts all the time due to a brain injury.

## Subsequent Assessment

35.    That same day, on September 19, 2024, staff at the David Lawrence Center took custody of Plaintiff for Involuntary Examination under the Baker Act.

36. The sole basis recorded for the commitment was suicidal ideation.

37. On September 20, 2024, Crooks was transferred to Park Royal Hospital at 9241 Park Royal Drive, Fort Meyers, Florida, at approximately 2:00 a.m.

38. Upon arrival, Park Royal completed an intake assessment. The physician documented that Plaintiff denied the presence of any psychotic symptoms, had never attempted suicide or self-harm in the past, and exhibited appropriate affect and focused cognition.

39. After completing the intake assessment, the "Diagnosis per Physician" was erroneously listed as Major Depressive Disorder (MDD).

40. Plaintiff, who has seen a therapist for several years, does not have Major Depressive Disorder and has never been diagnosed with Major Depressive Disorder.

41. The intake form lists no information that would justify a Major Depressive Disorder diagnosis. For example, the "Depressive/Affective Symptoms" section of the intake assessment does not mark any symptoms. It merely listed that she "feels guilty when she is taking up space here and doesn't need to be here."

42. Following the intake assessment, a "Certification of Individual's Competence to Provide Express and Informed Consent" was completed, and Plaintiff was found competent to provide express and informed consent. She declined to consent to voluntary admission.

43. On September 20, 2024, Plaintiff was evaluated by Park Royal for suicide risk under the **Columbia-Suicide Severity Rating Scale**.

44. The administering physician identified Plaintiff as low risk on the Columbia-Suicide Severity Rating Scale.

45. On September 20, 2024, Plaintiff was also evaluated by Park Royal for suicide risk under the SAFE-T Protocol with C-SSRS.

46. Plaintiff answered "No" to all questions on the C-SSRS portion of the

SAFE-T Protocol, indicating no or low current risk.

47.    Notwithstanding, she was not released.

48.    On September 23, 2024, Park Royal Hospital filed a Petition for Involuntary Inpatient Placement.

49.    On September 25, 2024, Park Royal Hospital withdrew the involuntary placement petition.

50.    On September 25, 2024, Plaintiff was discharged after six days of involuntarily commitment.

## CAUSE OF ACTION

### COUNT I – Unlawful Seizure — Under 42 U.S.C. § 1983, Fourth Amendment
(Pollack)

51.    The allegations of paragraphs 1-50 are reaffirmed and incorporated herein by reference.

52.    This cause of action is brought by Plaintiff against Defendant Pollack for deprivations of rights secured by the Fourth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

53.    At all relevant times, Defendant acted under color of state law as a law enforcement officer with the Collier County Sheriff's Office.

54.    Pollack intentionally committed acts that violated Plaintiff's constitutional right not to be detained without probable cause.

55.    Plaintiff did not have a mental illness.

56.    The Plaintiff was able to determine for herself whether examination was necessary.

57.    Plaintiff was never asked by Defendant Deputy Pollack to submit to a voluntary examination.

58.    There was no substantial likelihood that without care or treatment, Plaintiff would cause serious bodily harm to herself in the near future as

evidenced by recent behavior.

59. Because Plaintiff's arrest/detention was not supported by arguable probable cause or reasonable suspicion, Defendant Pollack violated Plaintiff's clearly establish Fourth Amendment rights.

60. At the time Defendant arrested Plaintiff, Plaintiff had the right to be free from an illegal arrest and/or being taken into custody.

61. Defendants' unlawful arrest was willful, reckless, callous, intentional, and malicious in derogation of the Plaintiff's rights under federal and state law.

62. No reasonable officer could have believed that probable cause existed to Baker Act Plaintiff.

63. As a direct and proximate result of this conduct, Plaintiff suffered damages, including mental anguish, permanent bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity of the enjoyment of life, medical treatment. The losses are permanent and/or continuing and Plaintiff will continue to suffer losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, punitive damages, injunctive relief, prejudgment interest in liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT II – False Imprisonment
(Pollack, Sheriff Rambosk)

64. The allegations of paragraphs 1-50 are reaffirmed and incorporated herein by reference.

65. This is an action, under the common law of the State of Florida, for false imprisonment.

66. Pollack acted intentionally, in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety,

or property. ***Alternatively,*** Pollack did not act intentionally, in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

67.    Plaintiff did not have a mental illness.

68.    The Plaintiff was able to determine for herself whether examination was necessary.

69.    Plaintiff was never asked by the Deputy to submit to a voluntary examination.

70.    There was no substantial likelihood that without care or treatment, Plaintiff would cause serious bodily harm to herself in the near future as evidenced by recent behavior.

71.    Defendant Deputy Pollack intentionally restrained Plaintiff, under circumstances that were unreasonable and unwarranted and without legal authority, which caused Plaintiff harm.

72.    As a direct and proximate result of Deputy Pollack's conduct, Plaintiff suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation embarrassment, loss of capacity of the enjoyment of life, medical treatment. The losses are permanent and/or continuing and Plaintiff will continue to suffer losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, costs, and such other and further relief as the Court deems appropriate.

### Claims Against Park Royal Hospital

### COUNT III – False Imprisonment
(Park Royal Hospital)

73.    The allegations of paragraphs 1-50 are reaffirmed and incorporated herein by reference.

74. This is an action, under the common law of the State of Florida, for false imprisonment.

75. Plaintiff did not have a mental illness.

76. The Plaintiff was able to determine for herself whether examination was necessary and declined to consent to voluntary examination

77. There was no substantial likelihood that without care or treatment, Plaintiff would cause serious bodily harm to herself in the near future as evidenced by recent behavior.

78. Defendant Park Royal Hospital intentionally restrained Plaintiff, under circumstances that were unreasonable and unwarranted and without legal authority, which caused Plaintiff harm.

79. It is the responsibility of the clinical staff at the designated receiving facility to conduct an evaluation to determine if the criteria for involuntary examination are met or if other conditions are present, making the individual ineligible.

80. The symptoms that were used to meet the criteria for the initiation of the involuntary examination were not the result of a mental health illness.

81. As a direct and proximate result of Park Royal Hospital's conduct, Plaintiff suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation embarrassment, loss of capacity of the enjoyment of life, medical treatment. The losses are permanent and/or continuing and Plaintiff will continue to suffer losses in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, costs, punitive damages, and such other and further relief as the Court deems appropriate.

### COUNT IV – Malicious Prosecution
(Park Royal Hospital)

82. The allegations of paragraphs 1-50 are reaffirmed and incorporated

herein by reference.

83. This is a cause of action for common law malicious prosecution under Florida law against Defendant Park Royal Hospital ("Park Royal").

84. On September 23, 2024, Park Royal commenced an original judicial proceeding against Plaintiff by filing a Petition for Involuntary Inpatient Placement (the "Petition") in the Circuit Court in and for Lee County, Florida.

85. Park Royal was the legal cause of the original proceeding. Park Royal, through its administrator and clinical staff, prepared, executed, and filed the Petition, and the proceeding would not have commenced but for Park Royal's conduct.

86. Park Royal commenced the proceeding without probable cause. At the time the Petition was filed, Plaintiff did not meet the statutory criteria for involuntary inpatient placement. Specifically:

    a. Plaintiff did not have a mental illness as defined by Fla. Stat. § 394.455(29).

    b. Plaintiff was able to determine for herself whether placement was necessary.

    c. Plaintiff was not manifestly incapable of surviving alone or with the help of willing family/friends or other services, and there was no substantial likelihood that, without treatment, Plaintiff would cause serious bodily harm to herself or others in the near future, as evidenced by recent behavior, and

    d. No reasonable mental health provider in Park Royal's position, having examined Plaintiff and possessing the information available to Park Royal as alleged in paragraphs 1 through 49, would have believed Plaintiff met the criteria for involuntary inpatient placement.

87. Park Royal acted with legal malice in commencing the proceeding. Park Royal filed the Petition despite clinical observations and examination

results showing Plaintiff met no statutory criteria in order to prolong Plaintiff's detention (or to cover up its failure to release her within 72 hours) and continue billing for her confinement and in reckless disregard of Plaintiff's rights.

88.     The original proceeding terminated in Plaintiff's favor. On September 25, 2024, Park Royal withdrew the Petition before any adjudication based on lack of merit

89.     As a direct and proximate result of Park Royal's malicious prosecution, Plaintiff suffered damages, including continued deprivation of her liberty, mental anguish and emotional distress, humiliation, injury to reputation, and attorney's fees and costs incurred in defending against the Petition.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, costs, punitive damages, and such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial as to all counts so authorized.

Respectfully submitted,

**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3105
Miami, FL 33131
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
johand@kuehnelaw.com
efiling@kuehnelaw.com

By:     *S/ Michael T. Davis*
        **BENEDICT P. KUEHNE**
        Florida Bar No. 233293
        **MICHAEL T. DAVIS**
        Florida Bar No. 63374
        ***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I certify on August 6, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By:   *S/ Michael T. Davis*
        **MICHAEL T. DAVIS**